Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

JS-6

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle, Sr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8233 | **DATE** | 3/20/2003 |
| **CASE TITLE** | Machine Tool Technology 21, Inc. vs. United Grinding Technologies, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Cross motions for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court is Plaintiff's motion for partial summary judgment [7-1] and Defendant's motion for summary judgment [10-1]. Plaintiff's motion is denied, and Defendant's motion is granted. See attached opinion.

*/s/ Charles R. Norgle*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 2 1 2003 | |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | ODY | 16 |
| X | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | 03 MAR 20 PM 3:42 U.S. DISTRICT COURT date mailed notice | |
| | | Date/time received in central Clerk's Office mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Machine Tool Technology 21, Inc., | ) | |
| | ) | No. 01 C 8233 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Charles R. Norgle, Sr. |
| | ) | |
| United Grinding Technologies, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED MAR 2 1 2003**

## OPINION AND ORDER

Before the court is Plaintiff's motion for partial summary judgment and Defendant's motion for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Plaintiff's motion is denied and Defendant's motion is granted.

## I. BACKGROUND[1]

The parties present the court with a simple issue of contract interpretation, in regard to the amount of commission to be paid under the parties' contract.

Plaintiff, Machine Tool Technology 21, Inc., an Illinois corporation with its principal place of business in Cook County, Illinois, ("MTT"), filed suit against Defendant, United Grinding Technologies, Inc., a Delaware corporation with its principal place of business in Ohio, ("UGT"), seeking to recover commissions allegedly due under the parties' contract. This suit was initially filed in Illinois state court, but was properly removed by UGT on October 25, 2001. (See Notice of

---

[1] The court takes the facts from the parties' Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

1

Removal). MTT's complaint contained two counts: Count I alleged breach of contract and Count II alleged violation of the Illinois Sales Representative Act, 820 Ill. Comp. Stat. § 120/0.01 *et seq*.

The events precipitating this litigation are excerpted as follows. On June 7, 1999, MTT and UGT entered into a contract, styled "Sales Representative Agreement." UGT is in the business of designing, manufacturing, and selling grinding machines. Under the contract, MTT acted as a sales representative and solicited sales for UGT within the territories defined in the contract, including areas of Iowa and Illinois. (See Affidavit of Chris Stine, Ex. A: Contract, Exhibit B [*hereinafter* Contract]). The contract also reserved to UGT the right to directly solicit and accept sales within MTT's defined territory. (See Contract, section 4). Whether sales were solicited by MTT or directly by UGT, MTT would receive a commission on such sales. (See Contract, sections 4 and 6). Specifically, section 6 of the parties' contract, styled "Commissions," explained how commissions were to be determined. (See Contract, section 6).

On September 26, 2000, UGT terminated the parties' contract effective October 26, 2000. The parties' contract provided for commissions after the termination of the contract. In the event of termination, MTT would receive commissions for sales including, products shipped by UGT prior to the effective date of termination, and products shipped by UGT against orders received and accepted by UGT prior to the effective date of termination. (See Contract, section 7.1). The commissions on such post-termination commissions would be calculated as provided in section 6 of the contract. (See Contract, section 7.2).

Prior to the termination of the parties' contract, UGT directly solicited, received and accepted two orders, without any involvement by MTT. The first order was from Wahl Clipper Corporation ("Wahl") and the second order was from Gleason Pfauter Hurth Cutting Tools ("Gleason"), both in

MTT's sales territory. The list price for the Wahl order was in the amount of $782,651 and the list price for the Gleason order was in the amount of $654,550. Both orders were discounted; the Wahl order was discounted by $70,328 and the Gleason order was discounted by $67,061. As finally negotiated by UGT, after the discounts, the Wahl order was in the amount of $712,323 and the Gleason order was in the amount of $587,489.

After termination of the parties' contract, MTT disputed the commission on the sale of these two orders. MTT contends that it is entitled to a commission of $43,370 on the Wahl order and $39,611 on the Gleason order. MTT contends that it is entitled to a full commission from the list price, without having to contribute toward the discount, based on language in section 4 of the contract and the parties' previous course of dealing.[2] In contrast, UGT contends that MTT is entitled to a commission of $19,927 on the Wahl order and $17,272 on the Gleason order.[3] UGT contends that MTT must contribute toward the discounts given to the Wahl and Gleason orders, and that such contribution toward the discounts is then taken from the commission earned, based on language in section 6 of the contract, which is explicitly referred to in section 4 of the contract.

On August 27, 2002, both MTT and UGT filed motions for summary judgment, (see Mots. for Summ. J.), which the court now addresses.

---

[2]As indicated later in this opinion, MTT's arguments confuse the legal significance between a course of dealing and a course of performance.

[3]In it's pleadings, UGT indicated that it erroneously overpaid the commission due to MTT on the Gleason order, paying a commission of $17,947. (See Def.'s Mot. for Summ. J.).

3

## II. DISCUSSION

### A. Standards for Summary Judgment

A grant of summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving part cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999). The Seventh Circuit has indicated that cases involving contract interpretation are "particularly suited to disposition by summary judgment." United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios, 220 F.3d 539, 542 (7th Cir. 2000).

The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1999) (citing Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at 574-78 (2d ed. 1983)).

## B. Choice of Law

In cases where a federal district court's jurisdiction is based upon diversity jurisdiction, the court must use the substantive law of the state in which it sits, including its choice of law rules. See Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 497 (1941) (indicating "the proper function of the . . . federal court is to ascertain what the state law is, not what it ought to be").

In this case, the parties' contract provides: "The validity and interpretation of this Agreement and each clause and part thereof shall be governed by, and construed in accordance with, the laws and regulations then prevailing in the State of Ohio." (See Contract, section 20). Illinois courts generally give effect to contractual choice of law clauses. See Great Lakes Overseas, Inc. v. Wah Kwong Shipping Group, Ltd., 990 F.2d 990, 994 (7th Cir. 1993) (citing Sumner Realty Co. v. Willcott, 499 N.E.2d 554 (Ill.App.1986), *appeal denied*, 505 N.E.2d 362 (Ill. 1987)).

In regard to the interpretation of the parties' contract, UGT cites to Ohio law, while MTT cites to Illinois law. However, since none of the arguments advanced by MTT in this litigation cast doubt on the validity of the parties' contract as a whole, or the choice of law clause, the court will apply Ohio law as the parties have agreed in their contract.

## C. Ohio Law Governing Contract Interpretation

The Ohio Supreme Court has stated: "[W]here . . . the parties following negotiations make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain meaning of the contract provides." Aultman Hosp. Ass'n. v. Community Mutual Ins. Co., 544 N.E.2d 920, 924 (Ohio 1989). "Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." Shifrin v. Forest City Enterprises, Inc., 597

5

N.E.2d 499, 501 (Ohio 1992). "Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." Aultman, 544 N.E.2d at 923 (citing Charles A. Burton, Inc. v. Durkee, 109 N.E.2d 265, 270 (1952)). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 652 N.E.2d 684, 686 (Ohio 1995) (citing Inland Refuse Transfer Co. v. Browning- Ferris Industries of Ohio, Inc., 474 N.E.2d 271, 272 (Ohio 1984)).

The Ohio Supreme Court has set forth a test for determining whether contract terms are ambiguous: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co., 374 N.E.2d 146, 150 (Ohio 1978). The test for whether a contract term is ambiguous has been more aptly stated as follows: "Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more *reasonable* interpretations." United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr., 716 N.E.2d 1201, 1208 (Ohio App. 1998) (emphasis added). "Parol evidence is thus not [to be used] for the purpose of establishing what one of the parties thought the agreement stated but is used to establish what the parties mutually agreed and understood to be the meaning of the agreement." 43 Ohio Jur. 3d, Evidence and Witnesses § 526 (2003).

In this case, the parties' contract is fully integrated. (See Contract, section 22). The parties' contract provides: "This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. This agreement shall not be amended except by written agreement signed by both parties." Id. Therefore, since this contract is fully integrated and the terms are clear

and unambiguous, the court will interpret the parties' contract based on its text as written, as a matter of law. See Nationwide Mut. Fire Ins., 652 N.E.2d at 686.

MTT offers two arguments in support of its motion for summary judgment. In its first argument, MTT contends that the plain language of section 4 of the contract clearly and unambiguously provides that MTT is entitled to an undiscounted commission when UGT unilaterally solicits and accepts a sale within MTT's sales territory. In response, UGT offers one argument in support of its motion for summary judgment, claiming that MTT must contribute toward the discounts given to the Wahl and Gleason orders, whether the sales were solicited by MTT or UGT, and that such contribution toward the discount is then taken from the commission earned, based on language in section 6 of the contract, which is explicitly referred to in section 4 of the contract.

To determine which of these two interpretations is correct, the court turns to the text of the parties' contract. Section 4 of the parties' contract provides, *inter alia*:

> UGT and any of its subsidiaries shall have the right to solicit and accept orders in the Territory directly; provided, however, that the Representative shall be entitled to a full commission on any such orders, which shall be due and payable *in accordance with the provisions of Section 6* hereof

(See Contract, section 4 (emphasis added)). The above-emphasized text in section 4 references section 6 of the parties' contract, styled "Commissions." Section 6.1(a) deals with situations where a sale is subject to a discount, and which provides:

> If a customer requests that the quoted price for the Product be discounted below its list price, Representative shall provide UGT will full details of such request for review. *If UGT determines to grant a discount, UGT may, as a matter of general guideline and not as an obligation, bear up to 66.7% of such discount and Representative will bear up to 33.3%. Representative's share of such discount shall be charged against any commission due Representative hereunder.* UGT has the sole right to establish list prices and UGT, in its sole discretion, may modify list prices from time to time, with or without prior notice.

7

(See Contact, section 6.1(a) (emphasis added)).

Contrary to MTT's assertion, section 4 of the contract does not clearly and unambiguously provide that MTT is entitled to an undiscounted commission when UGT unilaterally solicits and accepts a sale within MTT's sales territory. The clear and unambiguous language of section 4 indicates that any commission due to MTT is to be determined "in accordance with the provisions of Section 6." (See Contact, section 4). In an effort to circumvent this clear and unambiguous language, MTT places great emphasis on the word "full," which precedes the word "commission" in section 4. According to MTT, a "full commission" is one that is calculated based on the list price, without consideration of any discounts given. Such a construction of the text of section 4 of the contract displays a myopic insistence on one word, to the exclusion of the clear and unambiguous language that clarifies and defines the meaning of that word. In addition, such a construction of the text of section 4 of the contract is unreasonable, and would provide a windfall to MTT. To highlight this windfall, MTT concedes that a commission based on an order that it actively solicited would be subject to reduction based on any discount. For MTT to argue that it is entitled to an undiscounted commission in a situation where it did nothing to facilitate the order would lead to "manifestly absurd results," Alexander, 374 N.E.2d at 150, and would alter the parties' intent as expressed in the contract in a manner that unjustifiably benefits MTT. Compare Aultman, 544 N.E.2d at 924 ("Where a contract is plain and unambiguous as herein, it does not become ambiguous by reason of the fact that in its operation it may work a hardship upon one of the parties.") (citing Ohio Crane Co. v. Hicks, 143 N.E. 388, 389 (1924)).

As indicated earlier, MTT offers two arguments in support of its motion for summary judgment. In its second argument, MTT contends that, if the court were to look beyond the language

of the contract, the parties' previous course of dealing illustrates that MTT is entitled to an undiscounted commission because UGT had previously bore the entire discount.

Initially, MTT's arguments confuse the legal significance between a course of dealing and a course of performance. A course of dealing is relevant only when the parties to a contract have dealt with each other in similar transactions on previous occasions, and is concerned with facts existing at the time the contract was executed. See generally, E. Allan Farnsworth, Contracts § 7.13, at 783-84 (3d ed. 1999). In contrast, a course of performance is relevant to show the meaning that the parties to an agreement have attached to that contract being performed, and is concerned with facts that occurred after the time the contract was executed. Id. at 789. In light of this clarification, MTT offers no evidence that the parties had any dealings prior to the contract at issue, and thus any legal argument based on course of dealing is inappropriate. Therefore, the court presumes that MTT intended to argue that the parties' course of performance, subsequent to the execution of the contract, should be considered. However, any argument based on course of performance is also unavailing. The court has determined that the parties' contract is unambiguous, therefore the court "will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Shefrin, 597 N.E.2d at 501. Furthermore, the course of performance that MTT seeks to introduce to alter the terms of the parties' contract would have no such effect. Section 6.1(a) of the parties' contract provides that "UGT may, as a matter of general guideline and not as an obligation, bear up to 66.7% of such discount and Representative will bear up to 33.3%." (See Contract, section 6.1(a)). Thus, whether UGT bore the entire discount or apportioned the discount between itself and MTT, the clear and unambiguous meaning of the contract remained unchanged. UGT unilaterally retained the right to determine how to deal with discounts, and presumably would exercise that right

9

depending on a myriad of factors ranging from the general economic environment to encouraging the performance of sales representatives. The exercise of such a right does not create an ambiguity in the parties' contract, warranting admission of parol evidence.

Therefore, based on the clear and unambiguous language in sections 4 and 6 of the parties' contract, UGT properly reduced MTT's commission by it's contractually required contributions toward the discounts given to the Wahl and Gleason orders.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied and Defendant's motion is granted

IT IS SO ORDERED

ENTER:

*[signature]*

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 3-20-03